20. Subparagraph (i) *Payment* of the CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS Clause required to be incorporated in Purchase Order Number 586-C6-0329 requires that "[p]ayment shall be made for items accepted by the Government . . . ," and that payment will be made "in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR Part 1315."

Defendants' Breaches.

21. Plaintiff CCS Industrial Sales and AFTERDISASTER mobilized on-site during the period October 7th, 2005 through March 4th, 2006. As a Subcontractor to Plaintiff CCS Industrial Sales, AFTERDISASTER provided additional extraction and humidity control, setup containment walls, and provided germicidal fogging and spraying of the Basement and Sub-Basement of the former Veterans Affairs Medical Center, 1601 Perdido Street, New Orleans, Louisiana 70112-1262. Plaintiff CCS Industrial Sales provided (through two different Subcontractors) the roll-on/roll-off dumpster boxes by which debris was removed from the premises.

22. AFTERDISASTER mobilized on-site with an initial 65 to 75 people, and in addition to germicidal fogging and spraying, AFTERDISASTER removed refrigerators by physically lugging them down many flights of interior stairs, provided air cir-

culation and dehumidification, and provided other remediation services on Floors Numbers 1 through 10 of the former Veterans Affairs Medical Center.

23. Veterans Affairs by then had retained the services of another private party Contractor to monitor remediation Contractors. Veterans Affairs Security personnel were on-site at the former Veterans Affairs Medical Center to maintain order and to establish logs of everyone's comings and goings. Remediation services were performed in terrible conditions and were delivered with minimal supervision from Veterans Affairs. AFTERDISASTER documented its deliveries of remediation services with Daily Work Plans and Production Reports. Daily Work Plans were hand-delivered every day (including Saturday, Sundays, and holidays) by AFTERDISASTER to the on-site Veterans Affairs Contracting Officer's Technical Representative and to the private party Contractor retained by Veterans Affairs engaged to monitor the remediation Contractors.

24. Within two weeks of his initial meeting with Plaintiff CCS Industrial Sales, Randy Braley left the former Veterans Affairs Medical Center in New Orleans and he returned only sporadically through the remainder of the clean-up. Daily responsibilities were transferred to Benjamin Coe, a Veterans Affairs Resident Engineer

and a young man who had not before had such a position of responsibility. Randy Braley retained the position of Contracting Officer's Technical Representative, but he was on other projects and for the most part could not be located. In November 2005 Randy Braley notified Plaintiff CCS Industrial Sales that Purchase Orders had been transferred to Maria Pizzaro. Maria Pizzaro was not on-site at the former Veterans Affairs Medical Center. Maria Pizzaro made just one trip to the former Veterans Affairs Medical Center, and this only to reassure Plaintiff CCS Industrial Sales that Purchase Orders would be forthcoming. Over the next few weeks Plaintiff CCS Industrial Sales communicated with Maria Pizzaro asking for copies of Purchase Orders and for directions as to the performance/delivery of remediation services. Plaintiff CCS Industrial Sales tried by both telephone and electronic mail to reach Maria Pizzaro. Only about 1 in 8 communications to Maria Pizzaro were ever returned.

25. During the course of the clean-up at the former Veterans Affairs Medical Center responsibility for issuance of Purchase Orders was regularly transferred. Plaintiff CCS Industrial Sales initially dealt with Bernice Griffin. Subsequently Randy Braley assumed full responsibility for issuance of Purchase Orders and he said that

his assistant would be Maria Pizzaro. On or about January 13th, 2006 Maria Pizzaro transferred her responsibilities to Jayanti Menon, and then Jayanti Menon transferred her responsibilities to Nancy Bailey. Nancy Bailey transferred her responsibilities to Cindy Due. Cindy Due transferred her responsibilities to Corvette Kowalski. Corvette Kowalski transferred her responsibilities to Greg Player. Greg Player transferred his responsibilities to Barbara Hicks. And Barbara Hicks transferred her responsibilities to Brenda Stewart. Brenda Stewart has now told Plaintiff CCS Industrial Sales that she was responsible for the clean-up project from its inception. During the course of this shuffling of responsibilities Plaintiff CCS Industrial Sales and AFTER-DISASTER were still on-site daily, working on projects the general public cannot imagine, with minimum to no supervision or direction from Veterans Affairs.

26. On September 13th, 2006 Plaintiff CCS Industrial Sales submitted to the Defendants three then-undisputed Invoices: Invoice Number 1162 in the amount of $47,190 for dumpster services; Invoice Number 1173 in the amount of $373,212 for remediation services delivered on Floors Numbers 1 through 10 of the former Veterans Affairs Medical Center; and Invoice Number 1174 in the amount of $2,599,294 for remediation services delivered in the Basement and Sub-Basement of the former

Veterans Affairs Medical Center. There had been no complaints from Defendants about the remediation services furnished on behalf of Plaintiff CCS Industrial Sales at the former Veterans Affairs Medical Center.

27. On December 1st, 2006 Plaintiff CCS Industrial Sales was paid $1,500,000 under Purchase Order Number 586-C6-0329. Randy Braley by then was on another project. Randy Braley then told Plaintiff CCS Industrial Sales that Purchase Order Number 586-C6-0329 had exceeded the funded amount, that he could not, and would not, issue another Purchase Order, and that there were no Veterans Affairs funds to pay for any other remediation services at the former Veterans Affairs Medical Center.

28. Plaintiff CCS Industrial Sales submitted to Maria Pizzaro on January 31st, 2007 a certified $1,519,696 Claim for Invoice Number 1162 ($47,190), for Invoice Number 1173 ($373,212), and for the balance due under Invoice Number 1174 ($1,099,294). On March 6th, 2007 Plaintiff CCS Industrial Sales received from Maria Pizzaro a letter dated February 16th, 2007 which announces Purchase Order Number 586-C6-0329 was closed with the payment received by Plaintiff CCS Industrial Sales on December 1st, 2006 and that the remaining balance "cannot be paid at this time."

29. In this letter Maria Pizzaro directed Plaintiff CCS Industrial Sales to the ratification procedures set out at Federal Acquisition Regulation 1-602.3. Maria Pizzaro thereby admits that Randy Braley had blanket authority to make agreements with Plaintiff CCS Industrial Sales for remediation services at the former Veterans Affairs Medical Center and that any agreement with Plaintiff CCS Industrial Sales which is disavowed by Veterans Affairs is not binding "solely because the Government representative who made it lacked the authority to enter into that agreement on behalf of the Government." Federal Acquisition Regulation 1-602.3(a). Under Federal Acquisition Regulation 1-602.3(b)(5) these ratification procedures go forward under the *Disputes* Clause.

30. Defendants did not on or before April 4th, 2007, as required by 41 U.S.C. § 605(c)(2), either issue a Decision on the certified Claim of January 31st, 2007, else notify Plaintiff CCS Industrial Sales of the time within which a Decision would be issued.

31. On April 10th, 2007 the Network Director of the South Central Veterans Affairs Health Care Network wrote Senator Trent Lott that Plaintiff CCS Industrial Sales would not be paid any further sums by reason of "inconsistencies" between

Plaintiff CCS Industrial Sales' Invoices and Invoices submitted by AFTERDISASTER under other verbal Purchase Orders issued by Randy Braley. The Network Director wrote that Plaintiff CCS Industrial Sales would not be notified of the actions taken until Veterans Affairs' Office of Inspector General had completed an audit and review. The Network Director has offered no time certain by which a Decision will be issued.

## COUNT I
## DEFENDANTS ARE IN MATERIAL BREACH OF THEIR OBLIGATIONS UNDER THE *PAYMENT* CLAUSE.

32. Plaintiff CCS Industrial Sales incorporates and re-alleges paragraphs numbers 1. through 31. hereinabove as if fully set forth herein.

33. Defendants are in material breach of their obligations to CCS Industrial Sales under the *Payment* Clause of Purchase Order Number 586-C6-0329 because Invoices Numbers 1162, 1173, and 1174, first submitted on September 13th, 2006, remain unpaid.

COUNT II
PLAINTIFF IS ENTITLED TO RECOMPENSE FOR THE REASONABLE VALUE OF THE REMEDIATION SERVICES DELIVERED AT THE FORMER VETERANS AFFAIRS MEDICAL CENTER.

34. Plaintiff CCS Industrial Sales incorporates and re-alleges paragraphs numbers 1. through 31. hereinabove as if fully set forth herein.

35. To the extent Plaintiff CCS Industrial Sales' certified Claim of January 31st, 2007 is in excess of any funding limitations of Purchase Order Number 586-C6-0329, Veterans Affairs is obligated to recompense CCS Industrial Sales as on an implied-in-fact Contract for the reasonable value of the remediation services delivered on behalf of Plaintiff CCS Industrial Sales at the former Veterans Affairs Medical Center, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1154-55 (Fed. Cir. 1983).

COUNT III
THE REASONABLE VALUE OF THE REMEDIATION SERVICES DELIVERED AT THE FORMER VETERANS AFFAIRS MEDICAL CENTER IS NOT LESS THAN THE AGREED-UPON PRICES REFLECTED IN THE INVOICES.

36. Plaintiff CCS Industrial Sales incorporates and re-alleges paragraphs numbers 1. through 31. hereinabove as if fully set forth herein.

37. The reasonable value of the remediation services delivered on behalf of Plaintiff CCS Industrial Sales at the former Veterans Affairs Medical Center is not less than the agreed-upon prices reflected in CCS Industrial Sales' Invoices Numbers 1162, 1173, and 1174, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1155-56 (Fed. Cir. 1983).

COUNT IV
PLAINTIFF IS ENTITLED TO A MONEY JUDGMENT
NOT LESS THAN $1,519,626.

38. Plaintiff CCS Industrial Sales incorporates and re-alleges paragraphs numbers 1. through 31. hereinabove as if fully set forth herein.

39. By reason of Defendants' material breaches of Defendants' obligations to CCS Industrial Sales under the *Payment* Clause of Purchase Order Number 586-C6-0329, and by reason of Defendants' obligations to recompense CCS Industrial Sales as on an implied-in-fact Contract for the reasonable value of the remediation services delivered on behalf of Plaintiff CCS Industrial Sales at the former Veterans Affairs Medical Center, Plaintiff CCS Industrial Sales is due a Money Judgment not less than $1,519,626.

## Prayer for Relief

WHEREFORE, Plaintiff CCS Industrial Sales respectfully requests:

(a) that the Court declares that Defendants are in material breach of their obligations to CCS Industrial Sales under the *Payment* Clause of Purchase Order Number 586-C6-0329;

(b) that the Court declares that to the extent Plaintiff CCS Industrial Sales' certified Claim of January 31st, 2007 is in excess of any funding limitations of Purchase Order Number 586-C6-0329, Veterans Affairs is obligated to recompense CCS Industrial Sales as on an implied-in-fact Contract for the reasonable value of the remediation services delivered on behalf of Plaintiff CCS Industrial Sales at the former Veterans Affairs Medical Center, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1154-55 (Fed. Cir. 1983);

(c) that the Court declares that the reasonable value of the remediation services delivered on behalf of Plaintiff CCS Industrial Sales at the former Veterans Affairs Medical Center is not less than the agreed-upon prices reflected in CCS Industrial Sales' Invoices Numbers 1162, 1173, and 1174, *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1155-56 (Fed. Cir. 1983);

(d) that the Court Awards Plaintiff CCS Industrial Sales a Money Judgment not less than $1,519,626 and allowable interest under 41 U.S.C. § 611; and

(e) that the Court grants Plaintiff CCS Industrial Sales such other and further relief as may be just and proper.

Respectfully submitted,

Cyrus E. Phillips, IV
District of Columbia Bar Number 456500;
Virginia State Bar Number 03135
May 31st, 2007

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: *lawyer@procurement-lawyer.com*

Attorney of record for Plaintiff,
CCS Industrial Sales, Incorporated.