March 4, 2008

**USPS Certified Mail** _____________

CCS
311 Acorn Lane
Picayune, MS 39466

Subj: Claim for Clean Up and Remediation Services due to Hurricane Katrina Performed at VAMC New Orleans -Purchase Order # 586-C60329

Dear Mr. Burge:

I am in receipt of the subject claim in the total amount of $1,519,696.33 that is dated September 13, 2006 and was received by the Contracting Officer on March 21, 2007. In accordance with the guidelines of FAR 33.211 (a) (4), the Final Decision relative to the aforementioned claim is as follows:

**Description of the claim/dispute**

In the subject claim CCS seeks additional payment for services rendered during the clean up and remediation process performed after Hurricane Katrina at the VAMC New Orleans under the terms of the purchase order number 586-C60329 due to additional work performed to include alleged changes, additional labor, additional materials and other compensable acts of work performed. CCS's theory of recovery is that it held an implied-in fact contract for the value of services performed at the governments' request and in accordance with its agreement. CCS has provided with their claim three separate invoices as follows:

| | |
|---|---|
| Invoice # 1162 - Costs for dumpsters used to remove debris for basement and sub-basement | $ 47,190.00 |
| Invoice # 1173 - Work performed for dehumidification for Floors 1-10 | $ 373,212.19 |
| Invoice # 1174 - Work performed in basement to include rental equipment, materials and labor to provide germicidal fogging and spraying; setup and dismantling of equipment, set up of containment walls, pumping additional water; and generator refueling and monitoring | $2,599,294.14 |
| TOTAL | $3,019,696.33 |
| Less Payment date 12-6-06 | - $1,500,000.00 |
| TOTAL REQUESTED | $1,519,696.33 |

The subject claim is very confusing due the chaotic events due to the aftermath of Hurricane Katrina. However, below I have summarized what I believe the contractor is alleging and why, as well as the relief the contractor is requesting.

Invoice # 1162: Dated September 13, 2006, referencing 586-C60329, CCS is claiming $47,190.00 for costs incurred for debris removal from the VA Medical Center.

Invoice #1173: Dated September 13, 2006, referencing 586-C60329, CCS is claiming 373,212.19 for work they allegedly incurred for dehumidification of floors 1-10 of the VAMC during the time period from December 14, 2005 through February 14, 2006. The dehumidification work consisted of air movers, air scrubbers, dehumidifiers, and barrel fans; and a technician to monitor equipment to ensure proper operation; per diem expense for employees; dumpster; and commercial supervisor/manager.

Invoice # 1174: Dated September 13, 2006, referencing 586-C60329, CCS is claiming additional work and labor in the amount of $1,099,294.14 (original order - $1,500,000) {total invoice is $2,599,294.14} to include rental equipment, materials, and labor charges to provide Germicidal fogging and spraying; setup and dismantling of equipment; setup of containment walls; pumping additional water; and generator refueling and monitoring for the period October 7, 2005 through March 4, 2006. CCS alleges that they were instructed to perform the work by the COTR through this date.

In May 2007, CCS filed a complaint with the Court of Federal Claims seeking a declaratory judgment and a judgment under the Contract Disputes Act (CDA) for $1,519,696 as presented in three invoices: 1162, 1173 and 1174. The Court of Federal Claims has granted a Motion for a Stay of Proceedings and Remand to allow the Contracting officer to issue a final decision on the this CCS claim. This decision is in response to that order. It is my understanding that AfterDisaster wants to add to this claim $32,026.87 for a 1.5% carrying cost that was mistakenly omitted from Invoice 72406. This amount, however, was never presented to the contracting officer and a final decision will not be rendered on this issue.

**Contracting Officer's Statement of the relevant facts**

This claim arises from the damage brought about by the winds and rain that infiltrated the two lowest levels of the VA Medical Center, New Orleans in the wake of Hurricane Katrina in August 2005. The entire medical center was devastated; submerged, and fungus infected. Patients had to be evacuated. In August 2005, VISN 16 contracting officials hired contractors to perform clean-up and remediation services at VAMC New Orleans. CCS was one of the first contractors offered work at that time. They sub-contracted out the work to Southeast Restoration dba AfterDisaster (AD).

The issues in this claim basically involve two different areas of work. The first area of work includes the clean–up of the basement and sub-basement of VAMC New Orleans. The second area of work includes dehumidification of floors 1-10 in VAMC New Orleans.

Clean-up of the basement and sub-basement

CCS was awarded various contracts/purchase orders for clean-up of the basement and sub-basement of VAMC New Orleans. This clean-up was necessary in order for VA to even assess

whether the building was salvageable. In an e-mail CCS indicated that they could clean-up the entire basement and sub-basement areas for between $1,000,000 and $2,000,000.

On September 13, 2005, Contracting Officer Griffin awarded contract V502P-2477 to CCS to pump water out of the basement and the sub-basement. This contract included a provision that the contractor was not authorized to perform any work that exceeded the total price of $180,000. By September 22, 2005, the pumping of the basement and sub-basement was completed; CCS submitted two invoices and was paid a total of $165,000 for this work.

On September 26, 2005 CCS was awarded contract V502P-2483, PO 502-C54323. This contract required CCS to "clear out and clean critical areas of the basement and sub-basement" and it specified a not to exceed limit of $500,000. During performance of this contract, it became clear that the work being performed in the basement and sub-basement exceeded the scope of this contract. It was clear that this contract would not be sufficient for the work that was being ordered and performed. According to the Resident Engineer, the contractor was told that contract V502P-2483, PO 502-C54323 was going to be cancelled and replaced with a new P.O. for the basement and sub-basement work. It is my understanding that Maria Pizarro was involved in and aware of this cancellation. According to the Resident Engineer the new P.O was to be capped at $1.5 million dollars. In December of 2005, the Resident Engineer erroneously believed that a new Purchase Order, with the $1.5 million dollar price limitation, had been issued by contracting. He proceeded to have the contractor continue performance under that mistaken belief.

By February 2, 2006 the basement and sub-basement work that was required of CCS was substantially completed. (The only work after 2/2/06 was that CCS was required to provide VA with some equipment until March 4, 2006) On February 14, 2006, Contracting Officer Brenda Stewart issued PO 586-C60329 to CCS for the clean up of Basement and sub-basement that they had performed. This purchase order included a not to exceed amount of 1.5 million dollars. On February 20, 2006, contract V502P-2483 which was the initial $500,000 contract to clear out and clean critical areas of the basement and sub-basement, was cancelled in writing.

In June 2006, the VISN asked CCS when they would submit their invoice(s) against PO 586-C60329. CCS replied that they were awaiting input from their subcontractor, AD. CCS submitted the first invoice for the clean-up of the basement and sub-basement in September 2006; seven months after the work had been completed.

In December of 2006, VA officials certified and paid only $1.5 million under Purchase Order 586-C60329 citing the not to exceed provision in the purchase order.

<u>Dehumidification of floors 1-10</u>

CCS was also awarded various purchase orders for dehumidification of floors 1-10 of the VAMC New Orleans. Only two of these purchase orders are relevant to this claim.

The first relevant Purchase Order is P.O. 586-C60192 and was issued on October 27, 2005 by Maria Pizarro. This P.O was issued to CCS for providing "all labor and materials for

dehumidification of floors 1 through 10 of the VAMC New Orleans, LA". This was an estimated purchase order with a not to exceed amount of $500,000.00. This purchase order included a "Deliver on/before date of February 9, 2006. In short, this P.O. was for the dehumidification of floors 1- 10 from 10/28/05 through, at the latest, February 6, 2006. To date, CCS has submitted one invoice, invoice 1128, under this purchase order. It was submitted on November 11, 2005, and was for a total of $214,474.45. This invoice was paid by VA.

The second relevant Purchase Order is P.O. 586-C60254 issued on January 11, 2006 by Maria Pizarro. This P.O was issued to CCS for provision of all labor and materials required to continue the dehumidification process established under previous purchase orders. This was an estimated purchase order with a not to exceed amount of $2,394,738.90. This purchase order included a "Deliver on/before date of March 3, 2006. In short, this P.O. was for the dehumidification of floors 1- 10 from 1/11/06 through, at the latest, March 3, 2006. On January 2nd and 3rd of 2006, CCS submitted nine invoices under this purchase order for a total $2,064,723.20. VA has paid CCS $2,115,423.40 under this purchase order.

In September 2006, CCS submitted Invoice #1173, referencing Purchase Order 586-C60329. In this invoice, CCS claimed $373,212.19 for work they allegedly incurred for dehumidification of floors 1-10 of the New Orleans VAMC during the time period from December 14, 2005 through February 14, 2006. This invoice did not mention P.O. 586-C60192 or P.O. 586-C60254. Furthermore this invoice was submitted months after the work was completed.

As stated above, VA officials certified and paid only $1.5 million under Purchase Order 586-C60329 citing the not to exceed provision in the purchase order.

<u>Submission of claim</u>

On January 23, 2007, CCS submitted a certified claim to CO, Maria Pizarro, for the balance of the three invoices previously submitted. CO Pizarro replied that PO 586-C60329 was closed with the December 1, 2006 payment and that the remaining balance "cannot be paid at this time".

On May 31, 2007, CCS filed a complaint with the Court of Federal Claims seeking declaratory relief and a judgment under the Contract Disputes Act for $1,519,696 for the three invoices described above.

In anticipation of litigation the Contracting Officer submitted this claim to the VA Office of the Inspector General (OIG) for a detailed review. Jerry Grahe, auditor, conducted thorough research to determine whether questioned sums were supported and allowable (Report attached).

**<u>Contracting officer analysis:</u>**

**Clean-up of the basement and sub-basement**

I have carefully reviewed the facts and circumstance surrounding the clean-up of the basement and sub-basement of the VAMC New Orleans in the aftermath of Hurricane Katrina.

In addition, the OIG has audited this claim to determine whether the costs claimed by CCS are supportable and allowable. I have carefully considered these results.

In my opinion, at the time that the work was performed, there was no express contract governing this work. Initially contract V502P-2483, with a not to exceed amount of $500,000, was issued to CCS for this work. It appears that almost immediately, this contract was verbally cancelled. It is my belief that the contractor, VA engineering, and VA contracting all verbally agreed that this contract was not sufficient or appropriate for the work being performed. (This contract was later expressly cancelled with no invoices being paid.)

As soon as it became apparent that contract V502P-2483 did not cover the work being performed, CCS was promised a new purchase order and was asked to continue working on the clean-up of the basement until it could be processed. Contracting Officer Maria Pizarro appears to have been at least aware of this promise, if not involved in it. The Resident Engineer indicates that both he and the COTR told CCS that the new P.O. would have a limit of $1.5 million dollars. I have no evidence, however, that this limitation was ever communicated to CCS by someone with actual contract authority until the Purchase Order, PO 586-C60329, was formally issued.

On February 14, 2006, I issued PO 586-C60329 for the basement and sub-basement work. This P.O. clearly included a not to exceed amount of $1.5 million dollars. I received this dollar limitation amount from the COTR. I issued this purchase order after the work was substantially completed. I do not have any evidence of the contractor's acceptance of the price limitation contained in the Purchase Order. I believe that it would be difficult to prove that the contractor agreed to this price limitation.

It is clear that the work that CCS performed was necessary for the VA to assess the damage to the VAMC. Although I am aware of some concerns about the quality of the work performed, none of the work has been clearly documented as unsatisfactory. The VA benefited from this work and I find that the CCS is entitled to be paid the reasonable and allowable costs associated with the work performed.

<u>Invoice 1162:</u> CCS is claiming $47,190 for waste hauling expense on invoice 1162 dated September 13, 2006. This invoice covers cost of waste removal including delivery, hauling and service charges. CCS asked the VA for a separate PO to cover the waste removal, however none was issued. The amount requested represents waste hauling from October 10, 2005 through February 1, 2006. The OIG has not questioned any of these costs. The Resident Engineer confirms that the waste hauling should be charged under PO 586-C60329. I concur with payment of $47,190 for this invoice under PO 586-C60329.

<u>Invoice 1174</u>: CCS is claiming an additional $1,099,294.14 ($2,599,294.14 less the payment of $1,500,000) for the basement cleanup on invoice 1174. The OIG report reviewed the entire invoice amount of $2,599,294.14.

The OIG report questioned $95,497.44 worth of the equipment rental expense under AD invoice 72406 (part of invoice 1174). CCS is claiming, on behalf of AfterDisaster, cost for

equipment remaining on-site after February 2, 2006 with charges continuing through March 4, 2006. The OIG indicates that AfterDisaster had no presence on site after February 2, 2006. Further investigation, however, confirms that the VA requested AfterDisaster to continue to rent equipment until the VA no longer needed it. According to the Resident Engineer, the equipment in question remained onsite at the VAMC through March 4, 2006. Therefore, the questioned amount of $95,497.44 should be paid.

The OIG report questioned $16,322.43 of the material and supplies and employee health care expense on AD invoice 72406. The OIG states items identified and questioned on this invoice are not what is generally referred to as materials or commodities that are consumed during a process or supplies generally referred to as materials stored and dispensed when needed. Many items referred to as small tools are generally recovered though overhead and profit accounts since it does not meet the definition of a direct cost.

I concur with the OIG report on the $16,322.43 of questioned costs. The items claimed will or can be used on future projects by AfterDisaster. Generators were rented on a daily rate; therefore maintenance cost should be included in the daily rate with the exception of the fuel. The cost of health care benefits to employees does not meet the definition of direct costs since AfterDisaster will still benefit from these after demobilizing. Therefore, the amount of $16,322.43 will be denied.

Of the additional $1,099,294.14 claimed under invoice 1174, I find that the contractor is owed a total of $1,082,971.71.

Claim amendment involving invoice 1174: A new issue was apparently raised by AfterDisaster after submission of the initial claim. It is my understanding that AfterDisaster has requested that CCS add an additional $32,026.87 to the claim for a 1.5% carrying cost that was mistakenly omitted from Invoice 72406 (part of CCS invoice 1174). AfterDisaster indicates that VA was unable to provide for funding of this massive project. AfterDisaster further claims that they initially funded the project and they wish to therefore include their normal finance terms of 1.5% per month on invoice 72406.

This claim has never been formally presented to the contracting officer for a final decision. Although I will not render a decision on this, I will indicate that I currently have no evidence that anyone in VA ever agreed to accept financing from the contractor or from the subcontractor. I have no evidence that VA agreed to pay the contractor a finance charge.

**Dehumidification of floors 1-10**

Invoice 1173: CCS is claiming $373,212.19 on invoice 1173 dated September 13, 2006. This invoice is for the costs of dehumidification for floors 1-10 of the VAMC New Orleans from December 14, 2005 through February 14, 2006. This work is clearly outside of the statement of work on PO 586-C60329 which was issued for remediation for the basement and sub-basement. However, I have done some extensive research and this work appears to be within the scope of purchase orders 586-C60192 and 586-C60254. As such, I find that the contractor should be reimbursed for the appropriate, non-duplicative costs associated with this work under purchase

orders 586-C60192 and 586-C60254 issued on October 28, 2005 and January 11, 2006 respectively.

The OIG reviewed the costs claimed in invoice 1173. The OIG report questioned $13,789.78 of technician time for work performed without authorization, or a total of $16,685.63 when including CCS overhead and profit. (According to the OIG, AfterDisaster claimed 10 hours of technician time per day for monitoring of dehumidification equipment. However, there was no dehumidification equipment to monitor during the time period in question.) In addition, the OIG report questioned $5,598.16 for the total carrying cost including CCS overhead and profit. (A carrying cost of 1.5% was applied to invoices.) The OIG's total questioned cost on invoice 1173 was $22,283.79.

In response to the OIG's questioning of the carrying costs, AfterDisaster indicates that VA was unable to provide for funding of this massive project. AfterDisaster claims that they funded the project and is therefore including their normal finance terms of 1.5% per month on this invoice.

Once again there is no evidence that the VA ever requested financing from CCS or from AfterDisaster and no evidence that VA agreed to pay financing costs. In addition, the dehumidification of floors 1-10, was in fact funded by VA prior to performance. There were two properly funded purchase orders under which CCS should have invoiced. P.O. 586-C60192, issued on October 28, 2005, covered dehumidification through February 6, 2006. It had a not to exceed amount of $500,000 and CCS has thus far only invoiced for $214,474.45 under that purchase order. In addition P.O. 586-C60254 issued on January 11, 2006, covered dehumidification through March 3, 2006. This purchase order had a not to exceed amount of $2,394,738.90. To date, CCS has only invoiced for a total of $2,064,723.20 under this purchase order.

The fact that CCS did not choose to invoice under those available purchase orders does not make the VA responsible for finance charges. The fact that CCS submitted other invoices under those purchase orders in November 2005 and in January 2006 shows that CCS was fully aware of those purchase orders. For all of the above reasons, I find that CCS is not entitled to the carrying cost of $5,598.16 under invoice 1173.

In response to the OIG's findings questioning $16,685.63 for technician time, After Disaster indicates that this cost includes the cost of providing moisture readings which were continued until January 16, 2006. According to the Resident Engineer, moisture readings should take no more than 2 hours per day. Therefore I will allow 2 hours per day for a total of 62 hours at regular time rate of $32.91 or $2,040.42 for these moisture readings. The total, with overhead and profit, then for these readings comes to $2,448.50. I am denying the remaining $14,237.33 of the amount claimed for this technician time.

In total, I am denying $19,835.49 of the submitted costs for invoice 1173. I find that under invoice 1173, the contractor is entitled to a total of $353,376.70.

**Summary**

With regard to the basement and sub-basement work, except as specifically noted above, the contractor is seeking compensation for work that was ordered by VA personnel with knowledge of warranted contracting staff. Furthermore, there is not sufficient documentation to show that the work was less than satisfactory. Purchase Order 586-C60329, which established the not-to-exceed limit of $1.5 million dollars, was not formally issued until after the work was substantially complete. It would be difficult to prove that the contractor agreed to this price limitation. The government benefited from the performance of this work and should pay appropriate costs associated with this work.

CCS is claiming $47,190 for waste hauling expense on invoice 1162. Reimbursement for this amount requested under this claim is approved as part of PO 586-C60329 and should be reimbursed.

CCS is claiming an additional $1,099,294.14 ($2,599,294.14 less the payment of $1,500,000) for the basement cleanup on invoice 1174. VA denies payment for material and supply cost in the amount of $16,322.34. I find that the contractor is still owed a total of $1,082,971.71 under invoice 1174 for work performed.

For the dehumidification work performed on Floors 1-10 of the medical center the contractor is claiming $373,212.19 on invoice 1173. This work is not involved in clean-up of the basement or sub-basement and is clearly outside of scope of PO 586-C60329. However, this work is within the scope of other purchase orders that were issued to CCS, specifically P.O. 586-C60192 and P.O. 586-C60254. I find that CCS should be reimbursed for the appropriate costs for performing this work under those purchase orders. For the reasons specified above, a total of $19,835.49 has been denied from the contractor's invoice. Therefore the total amount owed to the contractor for this work under purchase orders 586-C60192 and 586-C60254 is $353,376.70.

CCS's total certified claim was for $1,519,697.04. This claim primarily consisted of three invoices: invoices 1162, 1173 and 1174. I have found that under these three invoices the contractor is entitled to a combined total of $1,483,538.41. This amount constitutes complete compensation for all costs associated with the work performed under P.O, 586-C60329 and all costs associated with work relating to dehumidification for floors 1-10 of the VAMC New Orleans from October 28, 14, 2005 through March 3, 2006. This amount further constitutes full compensation for the contractor's certified claim filed in January 23, 2007. This amount is inclusive of all costs direct and indirect including all litigation costs, attorney's fees and interest.

This is the final decision of the Contracting Officer. This decision was issued in compliance with the Order of the United States Court of Federal Claims dated January 3, 2008. However these matters are still in litigation. Therefore, no payments will be made pursuant to this final decision except as specifically ordered by the United States Court of Federal Claims.

Brenda Stewart

Brenda Stewart
Contracting Officer